*J.S. v. DOCCS*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2022

(Argued: December 7, 2022      Decided: August 3, 2023)

Docket No. 21-2447

J.S.,

*Plaintiff-Appellant,*

–v.–

NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY
SUPERVISION,

*Defendant-Appellee.*

B e f o r e :

CABRANES, CARNEY, and ROBINSON, *Circuit Judges.*

Plaintiff-Appellant J.S. appeals from a judgment of the United States District
Court for the Western District of New York (Sinatra, *J.*) dismissing for failure to state a
claim his suit against Defendant-Appellee New York State Department of Corrections
and Community Supervision ("DOCCS") for attorneys' fees and costs under 20 U.S.C.
§ 1415(*i*)(3)(B)(i), the fee-shifting provision of the Individuals with Disabilities
Education Act ("IDEA"). *See J.S. v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 557 F.
Supp. 3d 403 (W.D.N.Y. 2021). This provision permits a court, in its discretion, to award

reasonable attorneys' fees and related costs to "a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(*i*)(3)(B)(i)(I). The IDEA defines "parent" broadly to include, *inter alia*, foster parents, guardians, individuals "acting in the place of a natural or adoptive parent . . . with whom the child lives," and "individual[s] who [are] legally responsible for the child's welfare." *Id.* § 1401(23). On *de novo* review, we conclude that the IDEA permits a court to award fees and costs to J.S. as "an individual who is legally responsible for the child's welfare" because, as an adult "child with a disability" and without representation by a guardian, natural parent, or appointed individual, he prevailed in his action on his own behalf seeking required educational services from DOCCS. Accordingly, we reverse the judgment of the district court denying him an award of fees, and we remand the case for further proceedings consistent with this opinion.

Judge Cabranes joins the judgment of the Court and files a concurring opinion.

REVERSED and REMANDED.

———————

JULIE M. KEEGAN (Benjamin Taylor, *on the brief*), Disability Rights New York, Rensselaer, NY (Andrew Stecker & Maria E. Pagano, Prisoners' Legal Services New York, Buffalo, NY, *on the brief*), *for Plaintiff-Appellant J.S.*

KEVIN HU (Barbara D. Underwood, Victor Paladino, Jennifer L. Clark, *on the brief*), *for* Letitia James, Attorney General for the State of New York, Albany, NY, *for Defendant-Appellee New York State Department of Corrections and Community Supervision.*

Ellen Saideman, Law Office of Ellen Saideman, Barrington, RI, *for Amici Curiae Council of Parent Attorneys and Advocates; National Disability Rights Network; Disability Rights Education & Defense Fund; Disability Law Project, Vermont; Disability Rights Connecticut.*

———————

CARNEY, *Circuit Judge*:

The fee-shifting provision of the Individuals with Disabilities Education Act ("IDEA") permits a court, in its discretion, to award reasonable attorneys' fees and related costs to "a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(*i*)(3)(B)(i)(I). The IDEA defines "parent" broadly to include, *inter alia*, foster parents, guardians, individuals "acting in the place of a natural or adoptive parent . . . with whom the child lives," and, even more generally, "individual[s] who [are] legally responsible for the child's welfare." *Id.* § 1401(23). It guarantees a "free appropriate public education" ("FAPE") for children with disabilities "between the ages of 3 and 21, inclusive," *id.* § 1412(a)(1)(A), and provides "parent[s]," as statutorily defined, certain procedural safeguards to enforce this important substantive right, *id.* §§ 1412(a)(6), 1415. *See also Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 531 (2007) (explaining that the "IDEA, through its text and structure, creates in parents an independent stake" in the IDEA's procedural and substantive guarantees, and thus "conclud[ing] that [the] IDEA does not differentiate, through isolated references to various procedures and remedies, between the rights accorded to children and the rights accorded to parents").

In August 2016, Plaintiff-Appellant J.S.—then incarcerated and 20 years old—successfully brought an administrative proceeding against Defendant-Appellee New York State Department of Corrections and Community Supervision ("DOCCS"), alleging that DOCCS denied him a FAPE in violation of the IDEA. When DOCCS refused to pay J.S.'s attorneys' fees and costs, J.S. filed this action, seeking to recover $71,542.00 in fees and $988.72 in costs. Adopting in full the report and recommendation of the magistrate judge, the district court dismissed J.S.'s complaint for failure to state a claim, reasoning that J.S., as the child with a disability, was not a "parent" and not entitled to recover under the IDEA's fee-shifting provision. *See J.S. v. N.Y. State Dep't of*

3

*Corr. & Cmty. Supervision*, 557 F. Supp. 3d 403, 405 (W.D.N.Y. 2021). J.S. now challenges that ruling.

On *de novo* review, we conclude that the IDEA permits a court to award fees and costs to J.S. as "an individual who is legally responsible for the child's welfare" because, as a "child with a disability" under age 22 and without representation by a guardian, natural parent, or appointed individual, he prevailed in his action on his own behalf seeking required educational services from DOCCS. 20 U.S.C. §§ 1401(23), 1412(a)(1)(A). Accordingly, we REVERSE the judgment of the district court denying him an award of fees, and we remand the case for further proceedings consistent with this opinion.

## BACKGROUND

### I.     The Individuals with Disabilities Education Act

The IDEA, first enacted in 1975 as the Education for All Handicapped Children Act, Pub. L. No. 94-142, 89 Stat. 773, establishes a program under which the federal government provides funds to states to assist in their efforts to educate children with disabilities. *See* 20 U.S.C. § 1400 *et seq.* In this exercise of its Spending Clause authority, U.S. Const. art. I, § 8, cl. 1, Congress required that recipient entities make a "free appropriate public education"—a FAPE, in the IDEA's parlance—available to children with disabilities beginning when such children reach the age of 3 and continuing until they reach the age of 22. 20 U.S.C. § 1412(a)(1). With regard to children with disabilities and their parents, Congress described the IDEA's purposes as follows:

> (A) to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living;
>
> (B) to ensure that the rights of children with disabilities and parents of such children are protected.

4

*Id.* § 1400(d)(1)(A)–(B). Fundamental to the IDEA's operation, a qualifying child must be educated in accordance with an individualized education program ("IEP") that meets certain statutory standards and is specially designed to provide the child a FAPE. *Id.* §§ 1401(9), 1412(a)(4); *see also id.* §§ 1401(14), 1414(d) (defining IEP).

When the adequacy of an IEP is subject to dispute, the IDEA provides procedural recourse. *See, e.g., id.* § 1415(b)(5)–(8). An objecting parent may, for example, present a complaint and request what the statute refers to as an "impartial due process hearing" on that complaint, to be conducted by the local or state educational agency, which is charged with determining "whether the child received a free appropriate public education." *Id.* § 1415(b)(6), (f)(1)(A), (f)(3)(E). The decision of a hearing officer reviewing the due process complaint is "final," but if the decision is rendered by a local educational agency, "any party aggrieved" may appeal to the state educational agency, which then must conduct its own impartial review of the findings and decision and make an independent decision. *Id.* § 1415(g)(1), (*i*)(1)(A). An "aggrieved" party who has exhausted its administrative remedies along the avenue just described may then bring a civil action to enforce its rights. *Id.* § 1415(*i*)(2)(A). Suggestive of the breadth of the federal interest in such actions as conceived by Congress, the IDEA allows a party to proceed on such an action in federal district court "without regard to the amount in controversy." *Id.*; *see also id.* § 1415(*i*)(3)(A). And protective of the rights that it confers and the remedies that it affords, the IDEA allows the district court in any such action, in its discretion, to "award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." *Id.* § 1415(*i*)(3)(B)(i)(I).[1]

---

[1] In full, the fee-shifting provision reads as follows:

> In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs—

The IDEA defines "parent" broadly to encompass not just those individuals who are legally recognized as the child's parents under state law; rather, for IDEA purposes, a "parent" is:

> (A) a natural, adoptive, or foster parent of a child (unless a foster parent is prohibited by State law from serving as a parent);
>
> (B) a guardian (but not the State if the child is a ward of the State);
>
> (C) an individual acting in the place of a natural or adoptive parent (including a grandparent, stepparent, or other relative) with whom the child lives, or an individual who is legally responsible for the child's welfare; or
>
> (D) except as used in sections 1415(b)(2) and 1439(a)(5) of this title,[2] an individual assigned under either of those sections to be a surrogate parent.

*Id.* § 1401(23).

---

> (I)   to a prevailing party who is the parent of a child with a disability;
>
> (II)  to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation . . . ; or
>
> (III) to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose . . . .

20 U.S.C. § 1415(*i*)(3)(B)(i).

[2] Section 1415(b)(2) concerns protective procedures when the parents of the child are not known, the parents cannot be located, or the child is a ward of the State, such as the assignment of an individual to act as a surrogate for the parents. *See* 20 U.S.C. § 1415(b)(2)(A). Section 1439(a)(5) concerns protective procedures for similarly situated infants and toddlers. *See id.* § 1439(a)(5).

## II.   Factual & Procedural Background[3]

The relevant facts are not disputed.

J.S. was born in January 1996. When he was approximately five to six years of age, he was identified in the State of New York as a child with a learning disability.[4] Accordingly, he began to receive a special education in compliance with the IDEA. His special education continued through his elementary, middle school, and high school years.

In 2013, at age 17, J.S. was convicted of a state crime. He was then incarcerated and placed in the custody of DOCCS. As a New York State agency, DOCCS is bound to comply with the IDEA.[5] As noted above, the statute requires state entities to provide a FAPE to eligible individuals until the individual reaches the age of 22. During J.S.'s roughly three years of incarceration, however—that is, between December 27, 2013, and November 23, 2016—DOCCS did not provide J.S. the requisite special education.

In August 2016, J.S., who was by then 20 years old and acting on his own behalf, initiated an administrative proceeding against DOCCS, alleging that he had been unlawfully denied a FAPE. DOCCS resisted, citing various statutory and factual grounds for its actions. In March 2017, after a two-day hearing, the impartial hearing officer issued a 54-page decision and order largely agreeing with J.S. The hearing officer concluded, among other things, that DOCCS had committed several "gross violations"

---

[3] Our factual statement is drawn primarily from the well-pleaded allegations in J.S.'s complaint filed in federal district court, which we accept as true at the motion to dismiss stage. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

[4] When J.S. was about 8 or 9 years of age, he was classified as having an emotional disturbance, as well.

[5] The fact and extent of DOCCS's obligations under the IDEA were contested in the due process hearing, *see* J. App'x 27–32, but are not at issue in this appeal.

of the statute. *See* J. App'x 59–62. He explained that, despite J.S.'s requests, DOCCS provided J.S. "education in line with general education curriculum standards for inmates under 21 without a known history of special education or verified disability classification," although it had sufficient information to believe that J.S. was a child with a disability and had mental health and behavioral issues affecting his ability to learn. J. App'x 23, 60–61. For J.S., this general education was inadequate and violated the IDEA. The hearing officer's resulting order directed DOCCS to institute a wide array of remedies, including specific, forward-looking educational measures for J.S. For example, he ordered DOCCS to provide 540 modules—about three school years' worth—of 45-minute specialized math instruction; 540 modules of 45-minute specialized English Language Arts instruction; and 82 sessions, each 30 minutes long, of counseling services.

During the proceedings, J.S. was represented by two organizations: Disability Rights New York and Prisoners' Legal Services of New York. In his federal district court complaint, he alleges that he incurred $71,542.00 in attorneys' fees and $988.72 in costs and that DOCCS refused his request, made before he filed suit, for reimbursement of those charges. Conceding that J.S. prevailed in the administrative proceeding, DOCCS still moved to dismiss for failure to state a claim, positing that the IDEA's fee-shifting provision does not allow J.S. to recover these fees because he is himself a "child with a disability," and not "the parent of a child with a disability." 20 U.S.C. § 1415(*i*)(3)(B)(i).

The magistrate judge (McCarthy, *M.J.*) recommended that the district court grant the motion to dismiss. *J.S.*, 557 F. Supp. 3d at 406. He explained that "under traditional principles of statutory interpretation, Congress' explicit listing of who *may* sue . . . should be understood as an *exclusion of others* from suing." *Id.* (quoting *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 885 (9th Cir. 2005)) (omission and emphases in original). Because the fee-shifting provision reads that "parent[s] of a child with a disability" may

8

recover attorneys' fees, he reasoned, *only* "the parents, [and] *not the child*, [may] receive or pay attorneys' fees." *Id.* at 406–07 (quoting *L.A. v. Granby Bd. of Educ.*, 227 F. App'x 47, 50 (2d Cir. 2007) (summary order)) (emphasis in original). He concluded that the statute unambiguously disallows J.S. from receiving a fee award. *Id.* at 407.

In further support of this conclusion, the magistrate judge pointed to the Supreme Court's decision in *Arlington Central School District Board of Education v. Murphy*, 548 U.S. 291 (2006), which held that parents who prevailed in administrative proceedings under the IDEA could not recover expert fees incurred by them because (1) "costs" that are recoverable under the fee-shifting provision is a term of art that does not ordinarily include expert fees, and (2) clear notice of liability for such fees is required in an action to enforce the IDEA, as a Spending Clause statute, *id.* at 296–97. Applying *Arlington*, the magistrate judge determined that "the unambiguous text of the IDEA" does not "provide fair notice that the state could be liable to reimburse attorney's fees and costs to anyone other than 'the parent of a child with a disability'"— a term that did not include J.S. *J.S.*, 557 F. Supp. 3d at 407.

J.S. objected to the magistrate judge's report and recommendation, arguing principally that it is inconsistent with *Winkelman ex rel. Winkelman v. Parma City School District*, 550 U.S. 516 (2007). In *Winkelman*, the Supreme Court concluded that parents could proceed *pro se* in bringing an IDEA claim to vindicate their right to have a FAPE provided to their child. *Id.* at 529. The Court there observed that the "IDEA includes provisions conveying rights to parents as well as to children" and thus rejected "the inference that parents are excluded by implication whenever a child is mentioned [in the IDEA], and vice versa." *Id.* at 529–30 (commenting, by way of illustration, that the fee-shifting provision "allow[s] recovery of attorney's fees to a 'prevailing party who is the parent of a child with a disability' but fail[s] to acknowledge that a child might also be a prevailing party").

9

On *de novo* review, the district court (Sinatra, *J.*) rejected J.S.'s argument, adopted the magistrate judge's report and recommendation in full, and dismissed with prejudice J.S.'s complaint for fees. *J.S.*, 557 F. Supp. 3d at 405. As to the import of *Winkelman*—a case that J.S. had not identified for the magistrate judge and that the magistrate judge did not address—the district court declared only that "*Winkelman* does not require a contrary result." *Id.* Neither the district court nor the magistrate judge addressed the expansive nature and text of the IDEA's definition of "parent."

J.S. timely appealed.

## DISCUSSION

We review *de novo* a district court's dismissal of a complaint for failure to state a claim, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). We also review *de novo* a district court's interpretation of the IDEA, as we do with any statute. *A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 73 (2d Cir. 2005).

When interpreting a statute, we begin by giving effect to the text's plain meaning, which is informed by, but "does not turn solely on," dictionary definitions. *Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47, 57 (2d Cir. 2021). Rather, plain meaning "draws on the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* (internal quotation marks omitted); *see also D.S. by & Through M.S. v. Trumbull Bd. of Educ.*, 975 F.3d 152, 162 (2d Cir. 2020) (explaining that, when interpreting the IDEA, courts must "look to the statutory scheme as a whole and place the particular provision within the context of th[e] statute" (alterations in original accepted)). If we find the text ambiguous, we may seek guidance from the statute's legislative history. *Williams v. MTB Bus Co.*, 44 F.4th 115, 127 (2d Cir. 2022). The statute's

10

legislative history cannot overcome the plain meaning of the text but can be useful to understanding the context and the language adopted by the statute.

The text of the IDEA tells us that "a prevailing party who is the parent of a child with a disability" may bring an action to recover attorneys' fees. 20 U.S.C. § 1415(*i*)(3)(B)(i)(I). The parties do not dispute that J.S. is a "prevailing party." The only question before us is whether J.S. falls within one of the statutory definitions of a "parent of a child with a disability," in light of the statute's sweeping definition of "parent" but its concurrent failure to include expressly a child with a disability within that definition.[6] *See id.* § 1401(23). This is a matter of first impression in this Circuit[7] and

---

[6] Because it never challenged J.S.'s right to file a due process complaint or his right to a due processing hearing, DOCCS has arguably conceded that J.S. is a "parent" under the IDEA, since "parents" can initiate due process hearings, but the "child with a disability" is not identified as a proper party to do so. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995) (treating as "abandoned" issues not raised below); *see also G.B. by & Through Barbour v. Orange Sw. Supervisory Dist.*, 838 F. App'x 570, 572 (2d Cir. 2020) (summary order) (explaining that arguments not raised in administrative proceedings are generally waived). In light of the importance of the issue presented, however, and the parties' extensive arguments on the point, we consider the question on the merits.

[7] The only prior decision in this Circuit that the parties or we have identified as at all relevant is a non-precedential summary order issued in 2007, *L.A. v. Granby Board of Education*, 227 F. App'x 47. The question in *L.A.* was whether, in an IDEA action, attorneys' fees could be awarded to parents who had prevailed while proceeding *pro se*. Answering in the affirmative, we explained first that parties may appear *pro se* in an IDEA action when it is the party's "own case." *Id.* at 50 (quoting *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998)). Because the parents sought to enforce their own right to attorneys' fees under the IDEA's fee-shifting provision, we concluded that the parents could proceed *pro se*. *Id.* In reaching that conclusion, we commented that "the attorneys' fees provision of the IDEA provides that the parents, not the child, will receive or pay attorneys' fees." *Id.* (internal citation omitted). But this brief phrase—"not the child"—is at best dictum: it had no bearing on our holding in *L.A.* We were merely explaining that the parents were seeking to enforce their own rights under the IDEA. The question whether in some circumstances a child might be eligible for fees was not presented. Further, we decided *L.A.* before *Winkelman* was handed down, and as explained below, *Winkelman* weighs heavily toward the construction we adopt. Finally, *L.A.* was a non-precedential summary order without

11

appears to be relatively novel in other Circuits as well.[8]

For the reasons set forth below, we conclude that the statutory phrase defining "parent" to include "an individual who is legally responsible for the child's welfare" covers J.S., who had substantive and procedural rights under the IDEA as a "child with a disability," and who as an adult had legal authority to vindicate those rights in court. Congress gave no textual indication that it meant to exclude persons in J.S.'s situation from the term "an individual who is legally responsible for the child's welfare," and the broader statutory scheme confirms the correctness of our interpretation. Accordingly, J.S. is "an individual who is legally responsible" for his welfare—a prevailing "parent," as defined by the IDEA—and is eligible to pursue an award of fees.

## I.      Plain Meaning

The parties agree that the IDEA's fee-shifting provision establishes eligibility for attorneys' fees awards to prevailing "parents," as statutorily defined, and, under certain limited circumstances, to prevailing educational agencies. The core of DOCCS's

_____

binding effect. *See* 2d Cir. R. 32.1.1. Thus, *L.A.* plays no substantive role in our decision in this case.

[8] From the parties' submissions and our own research, it appears that none of our sister Circuits has squarely addressed the question before us. Two Circuits have suggested in dicta that the IDEA permits students with disabilities to recover attorneys' fees when they prevail in administrative proceedings, as we decide today. *See Irvine Unified Sch. Dist. v. K.G.*, 853 F.3d 1087, 1094 (9th Cir. 2017) (concluding that an adult student is entitled to fees but focusing its analysis on whether the student was a "prevailing party" and not whether the student was a "parent"); *Schmidt v. Special Sch. Dist. No. 1*, 77 F.3d 1084, 1085 (8th Cir. 1996) (declining to award fees to a college student because she was not a "prevailing party," but stating that a district court may, "in its discretion," award "fees when a disabled student is a 'prevailing party' in an IDEA hearing"). The Fifth Circuit, interpreting a previous version of the IDEA's fee-shifting provision, which allowed a court to "award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party," concluded that a student who was "eighteen years or older during pendency of the instant suit" and sought "fees in his own name" could sue to recover fees. *Fontenot v. La. Bd. of Elementary & Secondary Educ.*, 835 F.2d 117, 120 (5th Cir. 1988).

argument, as we understand it, is that the IDEA's definition of "parent" includes "explicitly enumerated individuals, none of which is the child with the disability himself," and therefore a child with a disability is *per se* precluded from recovering fees. Appellee's Br. 8. DOCCS posits that if we read "parent" and its definitional terms, including "an individual who is legally responsible for the child's welfare," to include a student such as J.S., we would be "read[ing] an absent word into the statute" and erroneously expanding its scope. *Id.* at 9–10 (quoting *Lamie v. U.S. Treasury*, 540 U.S. 526, 538 (2004)). For DOCCS, the textual inquiry ends there.

We are not persuaded that this inflexible approach takes due account of the language, structure, and context of the statute, as the Supreme Court in *Winkelman* instructed was especially appropriate in construing the IDEA. *See Winkelman*, 550 U.S. at 530–32. No one disputes that the term "parent," standing in isolation, most commonly is defined as a natural, adoptive, or step- parent. *See Parent*, Black's Law Dictionary ("[t]he lawful father or mother of someone"); *Parent*, Merriam-Webster ("one that begets or brings forth offspring"; "a person who brings up and cares for another"); *Parent*, Oxford Eng. Dictionary ("[a] person who is one of the progenitors of a child; a father or mother"; "a woman or man who takes on parental responsibilities towards a child"). To effectuate its policy goals in the IDEA, however, Congress expressly assigned a broader meaning to the word "parent" than the dictionary reflects as a colloquial use. "The dictionary is thus only a starting point." *Cuthill v. Blinken*, 990 F.3d 272, 279 (2d Cir. 2021); *see also Corey v. United States*, 556 U.S. 303, 314 n.5 (2009) ("[T]he meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." (internal quotation marks omitted)); *King v. Burwell*, 576 U.S. 473, 486 (2015) ("Our duty, after all, is to construe statutes, not isolated provisions." (internal quotation marks omitted)).

## A. Statutory Definitions of "Parent"

The IDEA establishes four broad definitions of "parent" for use in construing its substantive and procedural provisions. *See* 20 U.S.C. § 1401(23). Each definition connotes an adult who has in fact or in law undertaken responsibility for the child with a disability, including by protecting the child's right to a FAPE under the IDEA. One of the statute's given definitions of "parent" is "an individual who is legally responsible for the child's welfare." *Id.* § 1401(23)(C).[9]

Under the IDEA, all "children with disabilities" who are "between the ages of 3 and 21, inclusive," are entitled to a FAPE, *id.* § 1412(a)(1)(A), and that right may be enforced on their behalf. In New York as in many jurisdictions, however, a person over the age of 18 is no longer a "child"—that is, a "minor." Such a person having reached the age of 18, has legal authority to act on his or her own behalf. *See, e.g.*, N.Y. Dom. Rel. Law § 2; N.Y. Gen. Oblig. § 1-202; N.Y. C.P.L.R. §§ 105(j), 1201. The state presumes by law such a person to be responsible for his or her own welfare, absent a finding of incapacity. *See* N.Y. Mental Hyg. Law § 81.02(b) (explaining that a determination of incapacity requires "clear and convincing evidence" that a person is "unable to provide for personal needs and/or property management" and "cannot adequately understand and appreciate the nature and consequences of such inability").

In most instances, when a "child with a disability" is under the age of 18, "an individual who is legally responsible for the child's welfare" and who may act on the child's behalf is a person other than the child. But for the four years between age 18 and

---

[9] Contrary to common usage, a "parent" under the IDEA need not have a natural, adoptive, or even a legal relationship with the child. *See* 20 U.S.C. § 1401(23)(C) (defining a "parent" to include an individual "acting in the place of a natural or adoptive parent with whom the child lives"); *id*. § 1401(23)(D) (defining a "parent" to include a "surrogate" appointed by an agency for purposes of pursuing rights under the IDEA).

14

age 21, inclusive, when the IDEA continues to apply, some adult children with disabilities may act on their own behalf and may assume responsibility for their own welfare, including their educational rights. In fact, their natural parent may be disempowered from acting on their behalf. Because of the noncongruence under state law (a "minor" is a person under 18 years of age) and the definition of "child with a disability" under the IDEA (a "child" is a person between ages 3 and 21, inclusive), the "individual who is legally responsible for the child's welfare" may, in some cases, mean the adult "child with a disability" him- or herself. This case offers one such example.

DOCCS identifies no indication in the statutory text or in other related materials that Congress meant to exclude the child from this definition—other than what DOCCS itself argues should be inferred from the statute's failure to specify that a child with a disability can sometimes be responsible for his own welfare. The agency simply proposes that, because this precise anomalous circumstance was not expressly addressed in the statute's definition section—that is, the phrase "including a child with a disability" does not appear—that the statute must be read as excluding it.

We reject that proposition. J.S. brought this action when he was 20 years old. Although he was still a "child with a disability" under the IDEA, he was no longer a "minor" under New York state law. He was responsible for his own welfare.[10] To vindicate his rights under the IDEA, J.S. was legally entitled to retain and direct his own attorneys if he did not appear *pro se*. He could bring the administrative proceeding and this lawsuit in his own name.[11] And, as it turned out, with the assistance of his attorneys, J.S. was also able to prevail.

---

[10] No party alleges that J.S. had been found to be incapacitated.

[11] J.S. advises that at no point in these proceedings has DOCCS challenged his right to act on his own behalf.

15

We thus conclude that the operative phrase in the IDEA—"an individual who is legally responsible for the child's welfare"—must be read to include *any* such individual, including an individual who is a "child with a disability" and who is responsible under state law for their own welfare. Were it not so, individuals with disabilities who are between the ages of 18 and 21, inclusive, and not the subject of an incapacity determination, could be entitled to educational services under the IDEA but, paradoxically, hobbled in any effort to vindicate their rights. Such a result, we believe, is neither required by the IDEA's text, intended by Congress, nor consistent with its purposes.[12]

B.      Statutory Scheme

The Supreme Court has instructed that "a proper interpretation of the [IDEA] requires a consideration of the entire statutory scheme." *Winkelman*, 550 U.S. at 523. Here, the statutory scheme confirms the correctness of our interpretation. *See Burwell*, 576 U.S. at 486 ("[W]hen deciding whether the language is plain, we must read the words in their context and with a view to their place in the overall statutory scheme." (internal quotation marks omitted)).

As we have described, Congress declared in the IDEA its purpose "to ensure that all children with disabilities have available to them a [FAPE]" and "that the rights of *children with disabilities and parents* of such children are protected." 20 U.S.C. § 1400(1)(A)–(B) (emphasis added). One crucial way in which the IDEA effectuates this

---

[12] DOCCS also advances the view that interpreting "parent" to include an "adult student" would defy "the bedrock principle known as the 'American Rule,'" under which "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." Appellee's Br. 10 (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010)). Because we conclude that "an individual who is legally responsible for the child's welfare" can include a student who is legally responsible for their own welfare, the "statute" has "provide[d] otherwise." DOCCS's reliance on the American Rule is thus unavailing.

purpose is by requiring agencies that receive federal assistance pursuant to the IDEA to "establish and maintain [certain] procedures . . . to ensure that *children with disabilities and their parents* are guaranteed procedural safeguards with respect to the provision of a [FAPE] by such agencies." *Id.* § 1415(a) (emphasis added). These provisions make clear that the IDEA generally, through § 1415(a) specifically, guarantees the availability of procedural safeguards not only to parents of children with disabilities, but also to the children with disabilities themselves.

Many of the procedural safeguards required by the statute, however, refer to only "the parents of a child with a disability" without specific, independent reference to "a child with a disability." Only the "parents of a child with a disability," for example, may examine a child's education records, participate in meetings concerning the child's educational needs and placement, and "obtain an independent educational evaluation of the child." *Id.* § 1415(b)(1). Only "parents" are guaranteed "[w]ritten prior notice" in their native language when the educational agency proposes or refuses to start or change the child's educational placement or evaluation. *Id.* § 1415(b)(3)–(4). A list of all "procedural safeguards available" must also be given annually only to "the parents." *Id.* § 1415(d)(1)(A). In other words, interpreting "parent" as DOCCS insists would have broad and harmful implications: none of these procedural safeguards would be available to "children" who under state law are adults and who wish to enforce their own IDEA rights, even though § 1415(a) is explicit in providing that children with disabilities from age 3 to 21, inclusive, are "guaranteed [the] procedural safeguards" delineated in § 1415. *See Winkelman*, 550 U.S. at 527 (providing more examples of IDEA provisions that refer only to the "parent"). Unless the statutory language compels the result urged by DOCCS, we would be reluctant to conclude that Congress created an enforcement scheme that disfavored the enforcement rights of "children with disabilities" between the ages of 18 and 21.

17

The substantive rights declared in the IDEA are meaningful, of course, only if accompanied by an available enforcement mechanism. Accordingly, the IDEA requires the recipient state's procedures to provide that "any party"—the "parent" or "the public agency"—is entitled to present a due process complaint about "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." 20 U.S.C. § 1415(b)(6). The due process complaint must "set forth an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint." *Id.* § 1415(b)(6)(B). After a complaint is filed, "either party"—the "parent" or "the public agency"—must provide notice of the complaint "to the other party." *Id.* § 1415(b)(7). The educational agency then must meet with "the parents" to discuss the complaint and its allegations and with an aim to resolving the complaint, unless "the parents and the local educational agency agree in writing to waive such meeting." 20 U.S.C. § 1415(f)(1)(B)(i). As explained above, if the parties are not able to resolve the complaint in their preliminary meeting, either party may invoke their right to an impartial due process hearing. *Id.* § 1415(f)(1). After the hearing, and after exhausting their administrative remedies (as detailed above, *see supra* at 4–5), "any party aggrieved" may "bring a civil action" in state court or federal court "without regard to the amount in controversy." *Id.* § 1415(i)(2)(A).

Read together, these several provisions allow only the "parent" and "public agency" to present a due process complaint about the provision of a FAPE to a child with a disability. If we were to adopt DOCCS's restrictive interpretation of "parent," we would be concluding not only that J.S. is not entitled to attorneys' fees, but also that J.S., and any other child with a disability who seeks to enforce his or her own rights, are not entitled to due process hearings; they are not entitled to administratively appeal the results of the hearings; and they are not entitled to bring suit to enforce the educational

18

rights that the IDEA purports to guarantee them despite the statute's explicit contemplation of judicial proceedings. Absent a clear congressional statement to this effect, this reading strikes us as untenable. The IDEA expressly establishes substantive and procedural safeguards for children with disabilities, including children ages 18 to 21, inclusive, who may act as individuals responsible for their own welfare—not only to their legal parents.[13]

C.    *Winkelman ex rel Winkelman v. Parma City School District*

J.S. contends, and DOCCS disputes, that *Winkelman* is dispositive in J.S.'s favor because it holds that "parents," on the one hand, and "students" or "children," on the other, are used interchangeably throughout the IDEA. Appellant's Br. 8–9. We conclude

---

[13] DOCCS contends that our interpretation of "an individual who is legally responsible for the child's welfare" to include the child him- or herself is "tortured" and "finds no support in the provisions of the IDEA itself." Appellee's Br. 9. It is true that our reading can be used to generate a somewhat unnatural paraphrase of the fee-shifting provision; that is, that a "parent" is an individual responsible for the welfare of the child with a disability, where the "individual" is the child him- or herself. It is also true that some of the statutory definitions of "parent" envision that a "parent" is an individual other than the child. *See, e.g.*, 20 U.S.C. § 1401(23)(A) ("a natural, adoptive, or foster parent of a child), 1401(23)(B) ("a guardian"). These observations do not, however, preclude our conclusion that a child, in certain circumstances, can be "an individual who is legally responsible for the child's welfare."

As explained above, "parent" is expressly defined to include a broad swath of individuals whose primary characteristic is responsibility for the welfare of the child afforded rights by the IDEA. In most cases, such as when an unemancipated child is under the age of 18 or when an individual is deemed incapacitated, a "parent" is an individual other than the child. For this reason, it makes sense that many of the statutory definitions of "parent" refer to an individual other than the child. In a small fraction of cases, such as J.S.'s, however, a child is legally responsible for his or her own welfare. In light of the expansive definition of "parent," the broader statutory scheme, the Court's pronouncement in *Winkelman* that it found "little support for the inference that parents are excluded by implication whenever a child is mentioned, and vice versa," 550 U.S. at 530, and the IDEA's legislative history, it does not strike us as anomalous that Congress would have allowed that a child with a disability could be "an individual who is legally responsible for the child's welfare."

that *Winkelman* does not compel the statutory construction urged by J.S. Nonetheless, we find *Winkelman* instructive and strongly supportive of the construction we have adopted here in its approach to understanding the respective rights of parents and children under the IDEA. We therefore consider it and J.S.'s related arguments.

The question presented in *Winkelman* was whether, for purposes of proceeding *pro se* in a suit to obtain a FAPE for their child, parents of children with disabilities are "real parties in interest to IDEA actions" (in which case they may proceed *pro se*), or whether they are "mere guardians of their children's rights" (in which case they may not). 550 U.S. at 522. As just reviewed, the IDEA indisputably affords parents specific procedural rights to guarantee the provision of a FAPE for their child, *see* 20 U.S.C. § 1415; but the question before the Court in *Winkelman* was whether the IDEA also grants parents their own independent substantive right to obtain a FAPE for their children. Answering in the affirmative, the Court emphasized that to hold otherwise would lead to "incongruous results" that would be "inconsistent with the collaborative framework and expansive system of review established by" the IDEA. *Winkelman*, 550 U.S. at 531.

*Winkelman* is not dispositive here, however, because in *Winkelman*, unlike in J.S.'s case, no specific provision of the IDEA addressed the parents' own status vis a vis the child's rights; that is, no provision of the IDEA or use in the statute of the term "parent" or "child" actually required construction. The *Winkelman* Court thus based its analysis generally "on a comprehensive reading of [the] IDEA" and its "interlocking statutory provisions," *id.* at 522–23, ultimately determining that parents have their own independent rights to have their child receive a FAPE and that they are therefore proper plaintiffs to enforce those rights in federal court, *see id.* at 527.

*Winkelman* is persuasive authority, still, insofar as it observed that "the IDEA includes provisions conveying rights to parents as well as to children." *Id.* at 529. In so

observing, the Court emphasized that the "IDEA defines one of its purposes as seeking 'to ensure that the rights of children with disabilities and parents of such children are protected.'" *Id.* at 528 (quoting 20 U.S.C. § 1400(d)(1)(B)). For "the grammatical structure" of § 1400(d)(1)(B) to make sense, it explained, "rights" must refer to "the rights of parents *as well as* the rights of the child." *Id.* (emphasis added). The Court contrasted the alternative reading, in which parents of such children do *not* have rights under the IDEA and criticized that reading on the ground that then, "*only the child* could vindicate the rights accorded by [the] IDEA to a free appropriate public education." *Id.* at 533 (emphasis added). These passages all tend to confirm that one of the IDEA's core purposes is to guarantee a child's *own* right to a FAPE.

And as we have cautioned above, to be meaningful, the right to a FAPE must include not only the substantive right itself but also the procedural means necessary to enforce it. The *Winkelman* Court commented that "[t]he [IDEA's] procedural and reimbursement-related rights are intertwined with the substantive adequacy of the education provided to a child, and it is difficult to disentangle the provisions in order to conclude that some rights adhere to both parents and child while others do not." *Id.* at 532 (internal citations omitted). The Court thus expressly rejected the proposed "inference that parents are excluded by implication whenever a child is mentioned, and vice versa." *Id.* at 530. In support of its conclusion, the Court pointed to the IDEA's fee-shifting provision, parenthetically characterizing it as "allowing recovery of attorney's fees to a 'prevailing party who is the parent of a child with a disability' but failing to acknowledge that a child might also be a prevailing party." *Id.* (quoting 20 U.S.C. § 1415(i)(3)(B)(i)). These observations, as well as other supportive comments, strongly suggest the *Winkelman* Court's general view that, under the IDEA, the rights of children with disabilities and of their parents should be understood as virtually interchangeable.

We agree with DOCCS that the Court in *Winkelman* did not squarely hold that the IDEA allows covered children to recover attorneys' fees on their own behalf. Still, the Court's citation to the fee-shifting provision and subsequent parenthetical suggest that the Court did not accept that mere reference to the "parent" without specific reference to the "child" or "student" sufficed to conclude, based on the statutory text, that children are by implication *excluded* from fee recovery—DOCCS's main argument in support of their interpretation in the case before us. To the contrary, the *Winkelman* Court "conclude[d] that [the] IDEA does not differentiate, through isolated references to various procedures and remedies, between the rights accorded to children and the rights accorded to parents." *Id.* at 531.

The logic and approach of the Court in *Winkelman* thus reinforce our conclusion that a child with a disability who sues on his or her own behalf and who prevails may recover attorneys' fees as "an individual who is legally responsible for the child's welfare." The purpose of § 1415 is, in part, to ensure that "children with disabilities" are guaranteed the procedural safeguards necessary to protect their substantive right to a FAPE. 20 U.S.C. § 1415(a). If "parent" excludes children with disabilities between the ages of 18 and 21, inclusive, who are responsible for their own welfare, none of the procedural safeguards required by the IDEA would be meaningfully available to them because representation would be more difficult to obtain. Similarly, none of the administrative mechanisms enacted to enforce the IDEA's substantive provisions—such as the ability to file a due process complaint or the right to a due process hearing— would be accessible to these individuals, as detailed above. *See supra*, section I.B. But the statute provides that an aggrieved party *must* avail themselves of these administrative remedies before they can file suit in federal court. In *Winkelman*, the Court found that it would be "confusing and onerous" to interpret the IDEA to confer to parents procedural and reimbursement-related rights that they can enforce through

administrative proceedings when their child is not provided a FAPE, but to deny to parents the substantive right to a FAPE for their child that they can vindicate *pro se* in court. 550 U.S. at 532. So too here would it be nonsensical and "out of accord with the statute's design" to require that children with disabilities exhaust their remedies in administrative proceedings while simultaneously reading the statute as disabling them from doing so. *See id.*; *see also Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 370–71 (2d Cir. 2006) (explaining that courts should "construe the details of an act in conformity with its dominating purpose"). If we interpret the fee-shifting provision as DOCCS urges, then, we end up with the sort of "incongruous" scheme that the Court in *Winkelman* disclaimed. We, too, decline to adopt such a result where it is not compelled by the statutory language.

## II. Legislative History

Read both alone and within the broader context of the IDEA, the plain meaning of "an individual legally responsible for the child's welfare" thus is best read to include the adult "child with a disability." We note that, insofar as it is available, the legislative history confirms our interpretation that a child acting on his own behalf, if a prevailing party, is eligible to recover attorneys' fees.

In 1986, Congress amended the Education for All Handicapped Children Act ("EHA")—the IDEA's immediate predecessor—to authorize the award of reasonable attorneys' fees "to the parents or guardian of a handicapped child or youth who is the prevailing party." Handicapped Children's Protection Act of 1986, Pub. L. No. 99-372, 100 Stat. 796. The accompanying Senate and House Reports each explain that the proposed statutory term "parent" is meant to be broader than the traditional definition of "parent." H. Rep. No. 99-296, at 6 (1985); S. Rep. No. 99-112, at 13 (1985). The reports further recognize that "under appropriate circumstances a child or youth may also

23

bring an action or proceeding under EHA and receive an award of attorney's fees to the extent he/she prevails." H. Rep. No. 99-296, at 6; S. Rep. No. 99-112, at 14. This language indicates that Congress did not intend "the parents or guardian of a handicapped child or youth"—the plain text of that earlier version of the statute—to exclude the child as plaintiff or as potential recipient of a fees award. *See Fontenot v. La. Bd. of Elementary & Secondary Educ.*, 835 F.2d 117, 120 (5th Cir. 1988) (relying on this language in the legislative history to reject the argument that under the EHA, "all handicapped students who have reached the age of majority and are otherwise competent to bring suit in their own names [are] . . . foreclosed from bringing actions under the EHA").

The legislative history further confirms that the use in the fee-shifting provision of the phrase "who is the parent of a child with a disability" to modify "a prevailing party" serves only to distinguish the "parent" from the educational agency, rather than to cabin the types of plaintiffs who may recover fees. Both the Senate and House Reports, for example, explain that "parent" as used in the statute "does not include the State if the child is a ward of the State," but is meant to include more than just a traditional parent. H. Rep. No. 99-296, at 6; S. Rep. No. 99-112, at 13–14. The Senate Report notes further that a consequence of the addition of the fee-shifting provision is that, when "cases are successfully litigated" under the EHA "against a state or local education authority," "that authority could be responsible for paying the attorneys' fees" of the "prevailing party." S. Rep. No. 99-112, at 3; *see also* 99 Cong. Rec. S21387, 21389–90 (daily ed. July 30, 1985) (explaining that S. 415, which "[a]llow[s] courts to award attorney's fees to *prevailing plaintiffs*," is intended to protect against discrimination to handicapped children (emphasis in original)).[14]

_____

[14] In fact, it was not until 2004 that agencies could recover any attorneys' fees under the IDEA. *See* Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, 118

The legislative history thus offers no reason to doubt the soundness of our construction of the statute.

## III. The Spending Clause Argument

DOCCS also presses the Spending Clause argument adopted by the district court, which proceeds as follows. Spending Clause legislation like the IDEA takes on "the nature of a contract," and accordingly, a recipient of federal funding must "voluntarily and knowingly" accept the conditions imposed by the statute. *Arlington*, 548 U.S. at 296. A state cannot "knowingly accept conditions of which they are 'unaware' or which they are 'unable to ascertain.'" *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). Rather, to be enforceable, the statute must provide "clear notice" of the liability; if it does not, the court may not make an award against the state.

DOCCS points in support to the holding of *Arlington*, in which the Supreme Court held that the IDEA's fee-shifting provision does not authorize prevailing parents to recover fees for services rendered by non-attorney experts retained by them to help enforce their rights under the IDEA. *Id.* at 293–94. The statutory text provides for an award of only "'reasonable attorneys' fees as part of the costs' to the parents," the Court reasoned; it "does not even hint" at the recovery of fees for services rendered by non-attorney experts. *Id.* at 297. From the vantage of a state official, the Court said, the fee-shifting provision did not furnish sufficiently clear notice that the state could be liable for expert fees on top of attorneys' fees. It thus rejected the parents' request to be reimbursed for such expenditures. *Id.* at 300. On this basis, DOCCS argues that in J.S.'s case, because the child with a disability is not explicitly identified in the IDEA as a party

---

Stat. 2647. Even now, agencies may obtain fees only under a more limited set of circumstances—upon a showing of frivolousness, unreasonableness, or improper purpose—than may statutory "parents." *See* 20 U.S.C. § 1415(i)(3)(B)(i)(II)–(III).

who may be awarded fees, the state has no such "clear notice," and the court is precluded from making such an award. *See* Appellee's Br. 13; *J.S.*, 557 F. Supp. 3d at 407.

This argument, too, fails to persuade. In accepting IDEA funding, states expressly commit to providing a FAPE to all children with disabilities. States also agree to "establish and maintain procedures" to "ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE]" by educational agencies. 20 U.S.C. § 1415(a). They are on notice that if they fail to do so, they may be subject to administrative and judicial proceedings, and that if they lose, they may be liable for the attorneys' fees of "a prevailing party who is the parent of a child with a disability." *Id.* § 1415(*i*)(3)(B)(i)(I). They are also aware that the IDEA defines "parent" broadly to include, *inter alia*, "an individual who is legally responsible for the child's welfare." *Id.* § 1401(23).

Well over a decade ago, *Winkelman* further confirmed that the procedural and substantive rights established by the IDEA are "intertwined," categorically rejecting the notion that children are "excluded by implication" whenever the IDEA uses the term "parent." 550 U.S. at 530–31. *Arlington* speaks to recovery of a type of cost—non-attorney expert fees—that the statute did not address at all; here, we address liability for a type of cost—attorneys' fees—that the statute expressly allows.

In light of these known obligations, and for the textual, historical, and other reasons explained in more detail above, "a state official would clearly understand that one of the obligations of the [IDEA] is the obligation to compensate" for their attorneys' fees those who prevail on their IDEA claims, under whichever sub-definition of "parent" the individual qualifies. *Arlington*, 548 U.S. at 296; *see also Bennett v. Ky. Dep't of Educ.*, 470 U.S. 656, 669 (1985) (explaining that while "federal grant programs originate in and remain governed by statutory provisions expressing the judgment of Congress

26

concerning desirable public policy," Spending Clause precedent does not require Congress to "prospectively resolve every possible ambiguity concerning particular applications" of a statute before a state will be deemed to have accepted a condition of federal funds). It is the notice of *liability* for a prevailing party's attorneys' fees, not the precise identity of the prevailing party, that is of operative significance. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005) (explaining that the state has sufficient notice when a statute makes clear that "some conditions were placed on the recipient of federal funds," and that "Congress need not specifically identify and proscribe each condition in the legislation" (internal quotation omitted)); *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999) (similar). Because we conclude that the plain meaning of "an individual who is legally responsible for the child's welfare" includes the adult child, any objections based on the Spending Clause fall short.

In addition, we note that the group of adult students who bring and prevail on such claims on their own behalf seems likely, based on the scarcity of reported cases in this posture, to constitute at most a small fraction of prevailing "parents." The IDEA's sweeping definition of "parent" contemplates many variations of plaintiffs in a wide range of situations who bring suit to enforce the rights the IDEA creates. Congress chose to allow a district court to award attorneys' fees and costs to all such plaintiffs when they prevail, in contrast to its decision to confer to the state only limited authority to seek fees. The difference in approach can fairly be understood to reflect a congressional aim to be broad in allowing recovery of attorney's fees to prevailing plaintiffs.

These provisions thus give the states ample notice of a possible obligation to pay fees to a prevailing individual bearing responsibility, like J.S., for the welfare of a child with a disability.

**CONCLUSION**

For the reasons stated above, we REVERSE the district court's judgment dismissing J.S.'s complaint and REMAND the case for further proceedings.

JOSÉ A. CABRANES, *Circuit Judge*, concurring:

I join the judgment of the Court. Plaintiff-appellant J.S. prevailed on claims he brought on his own behalf under the Individuals with Disabilities Education Act (the "IDEA"). He now seeks attorneys' fees under the IDEA as a "prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I) ("In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability."). I write merely to indicate that, in my view, the simplest disposition of this case would be to hold that J.S. can seek attorneys' fees under the IDEA because the Supreme Court "conclude[d]" in *Winkelman ex rel. Winkelman v. Parma City School District* that the "IDEA does not differentiate, through isolated references to various procedures and remedies, between the rights accorded to children and the rights accorded to parents." 550 U.S. 516, 531 (2007); *see id.* at 530 (citing the IDEA's attorneys' fee provision as evidence that there is "little support for the inference that parents are excluded by implication whenever a child is mentioned, *and vice versa*" (emphasis added)).